In the Interest of Danny Duane DIMMITT and Denise Jeanne Dimmitt, children under the age of seventeen.

No. KCD 29249.

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1977.

Scott O. Wright, Brown, Wright, Willbrand & Simon, Columbia, for appellant and natural father, Danny Lee Dimmitt.

Michael W. Mulford, Kirksville, Larry S. Phillips, Edina, for respondents and maternal grandparents, Mr. and Mrs. Aldace Naughton, Jr.

Before TURNAGE, P. J., and PRITCHARD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This is an appeal by Danny Lee Dimmitt (Danny), the natural father of minor children Danny Duane Dimmitt and Denise Jeanne Dimmitt, from a judgment entered by the Circuit Court of Macon County, Missouri, Juvenile Division, declaring Danny Duane and Denise Jeanne to be neglected children and placing them "in the custody of their maternal grandparents, Mr. and Mrs. Aldace Naughton, Jr., under the supervision of the Juvenile Officer . . . ."

The court below found the children to be neglected as specified in Section 211.-031(1)(a), RSMo 1969, solely by reason of the fact that certain weekly child support payments, which Danny was ordered to pay under a final decree in a prior dissolution of marriage proceeding, were in arrears.

Although amended by Laws 1976, Section 211.031(1)(a), RSMo 1969, in effect at the time the instant proceeding was initiated and heard, provided so far as here pertinent, as follows:

"211.031. *Jurisdiction of juvenile court over children who are neglected or charged with crime*

Except as otherwise provided herein, the juvenile court shall have exclusive original jurisdiction in proceedings:

(1) Involving any child who may be within the county who is alleged to be in need of care and treatment because:

(a) The parents or other persons legally responsible for the care and support of the child neglect or refuse to provide

proper support, education which is required by law, medical, surgical or other care necessary for his well-being; except that reliance by a parent, guardian or custodian upon remedial treatment other than medical or surgical treatment for a child shall not be construed as neglect when the treatment is recognized or permitted under the laws of this state; . .&rdquo;

The natural father's principal contention on appeal is that notwithstanding his failure to keep the child support payments current the children were not "neglected" within the purview of Section 211.031(1)(a), supra, hence, a necessary prerequisite was missing for vesting the Juvenile Division of the Circuit Court of Macon County, Missouri, with jurisdiction to take the children from him and place them in the custody of their maternal grandparents. The natural father alternatively argues that "petitioners failed to sustain their burden of proving that the natural father was an unfit person to have custody of his children."

A verbal montage of the facts reveals that Danny Duane and Denise Jeanne are the progeny of a teen-age marriage, their father and mother having married when they were sixteen and seventeen years of age, respectively. Danny Duane was born October 13, 1967, and Denise Jeanne was born November 13, 1969. In 1971 the family moved from Macon County, Missouri, to Columbia, Missouri. Around May of 1972 Patricia Naughton Dimmitt (the mother) began experiencing mental health problems and from then on until her death some three years later she was in and out of the Mid-Missouri Mental Health Center in Columbia and the State Mental Hospital in Fulton seeking treatment. Her condition, diagnosed as schizophrenia, frequently manifested itself in bouts of severe depression. In view of the problems besieging the young couple, Danny's parents moved to Columbia, Missouri, to assist him in caring for the children. Following one intermittent period of hospitalization (October, 1973), Patricia went to Macon County to live with her parents, Mr. and Mrs. Aldace Naughton, Jr. During the latter part of the summer of 1974, the children went to Macon County to visit their mother and their maternal grandparents. They were never returned to their father, who was still living and working in Columbia, Missouri.

Contemporaneously with Patricia's developing mental health problems, the young couple began experiencing marital problems which eventually culminated in the dissolution of their marriage. The dissolution of marriage proceeding was initiated by Patricia in the Circuit Court of Macon County, Missouri, while she had the children with her and resulted in a final decree entered in February of 1975, which, inter alia, awarded custody of the two minor children to her and ordered Danny to pay $25.00 per week child support.

Patricia spent most of the winter of 1975–76 in the State Hospital at Fulton, Missouri. She returned to the State Hospital in Fulton, Missouri, during the summer of 1976 as a patient and died there on July 15, 1976. From the fall of 1974 until Patricia's death on July 15, 1976, the children stayed with and were looked after by their maternal grandparents in Macon County during the periods their mother was hospitalized.

From February 1975 (the date of the decree in the dissolution of marriage proceeding) to July 1976 (the date of Patricia's death) Danny paid $875.00 in child support payments. Beyond question, certain payments were in arrears. However, during the period just mentioned Danny voluntarily furnished clothing to the children in the amount of $305.00, maintained medical and hospital insurance coverage on them, and paid a $675.00 dental bill incurred on behalf of Danny Duane. He regularly visited the children two or three times a month at which time he would take them to Columbia to spend the weekends with him.

Notwithstanding Danny's failure to meet all of the child support payments, there is not a scintilla of evidence that the physical, mental and emotional needs of Danny Duane and Denise Jeanne were ever neglected while they were with Danny, their

natural father, or while they were with their maternal grandparents. In the same vein, the love and affection possessed by both Danny and the maternal grandparents for the children, and the sincere desire of each to have custody of them, stands unquestioned and beyond reproach. The evidence further discloses that each has the ability to provide and care for the children.

A few days after Patricia's death, and more particularly on July 31, 1976, Danny went to Macon County to get his son and daughter and take them to Columbia, Missouri, for the purpose of providing a home for them. While in the process of doing so the Juvenile Officer of Macon County, apparently at the suggestion and insistence of the maternal grandparents, informed the Circuit Court of Macon County, Juvenile Division, that Danny Duane and Denise Jeanne appeared to be neglected children within the purview of Section 211.031(1)(a), supra. The court, after conducting a preliminary inquiry, placed the children under the supervision of the Juvenile Officer, with directions to place them in the temporary custody of the maternal grandparents "pending a hearing and subject to further order of the Court." Section 211.081, RSMo 1969. Danny left Macon County with the children before a copy of the order could be served upon him. However, a copy of the order was subsequently served upon Danny in Boone County on July 26, 1976, and on the same date the children were returned to Macon County. On July 30, 1976, the Juvenile Officer of Macon County filed a petition asking the Juvenile Division of the Circuit Court of Macon County to assume jurisdiction of the children pursuant to Section 211.031(1)(a), supra. Following a hearing, the complained of judgment was entered.

■ Section 211.031(1)(a), supra, legislatively recognizes the power of the state, acting by and through the Juvenile Division of the Circuit Court in the capacity of parens patriae, to assume direction, control and custody of minor children when certain carefully prescribed conditions are found to exist. However, it is not within the province of the juvenile courts to determine generally what conditions or exigencies warrant their intervention between parent and child. Establishing the nature and limit of the conditions and exigencies which warrant judicial intervention is a legislative prerogative as reflected by the firmly accepted principle that "juvenile courts are courts of limited jurisdiction and may exercise only such powers as are conferred by statute." *In Re A____ N____*, 500 S.W.2d 284, 287 (Mo.App.1973).

■ The legislature has responsibly exercised its prerogative by wisely refraining from vesting juvenile courts with broad, unlimited authority to intervene between parent and child. In doing so it has evinced awareness of a misty but irrefutable truth—immeasurable intangible values are attached to the relationship between children and their natural parents which cannot be supplied by others regardless of how exemplary their intentions may be. Indirect recognition of this fundamental truth is exemplified by cases such as *In Re I. M. J.*, 428 S.W.2d 18, 22 (Mo.App.1968), wherein the court was prompted to note that "[i]t is not the purpose of statutory neglect proceedings to find substitute or foster parents for children; the State has an interest in the integrity of the family, and in such proceedings parental rights should be limited only 'to the extent necessary to achieve the most desirable goal, wherever possible, of reinstating the natural and normal parent and child relationship.'" The right of natural parents to have custody of their minor children, unless their welfare is manifestly jeopardized by reason of parental unfitness, is considered inviolate and vigilantly guarded. *Ex Parte De Castro*, 238 Mo. App. 1011, 190 S.W.2d 949, 959 (1945); and *Tomlinson v. French Institute of Notre Dame DeSion*, 232 Mo.App. 597, 109 S.W.2d 73, 75 (1937). The relationship between natural parent and child is too sacred and runs too deep to be indifferently approached or lightly interfered with.

■ In order to vest the Juvenile Division of the Circuit Court of Macon County with jurisdiction to intervene under Section

211.031(1)(a), supra, and divest Danny of his custodial rights as natural parent of Danny Duane and Denise Jeanne, it was incumbent upon petitioner to plead and prove that the minor children were "in need of care and treatment" because Danny did "neglect or refuse to provide proper support . . . or other care necessary" for their "well-being". The wording of the statutory provision relied upon by petitioner makes it clear that before a juvenile court can deprive a natural parent of custody of his minor children two conditions precedent must be alleged and proved, namely, (1) that the minor children are "in need of care and treatment" and (2) such need has arisen because the natural parent has neglected or refused to provide "proper support" and "other necessary care" for their "well-being". In the instant case the stark truth is the minor children were not "in need of care and treatment". Their needs and wants, in every sense, were being supplied prior to and at the time the neglect petition was filed by their maternal grandparents who, although not their legal custodians, had de facto custody of them up to the time of Patricia's death by reason of Patricia's implied consent. Petitioner's failure to prove the first essential condition precedent mentioned left the Juvenile Division of the Circuit Court of Macon County without jurisdiction to enter judgment depriving Danny of his custodial rights as natural parent of the children. The facts and holding in the case of *In Re Ayres*, 513 S.W.2d 731 (Mo.App.1974), are particularly apposite to this case and bear out the conclusion just reached. In the course of holding that there was insufficient evidence to support a finding by a juvenile court that a minor child was neglected by its natural mother for the purpose of assuming jurisdiction over said child pursuant to Section 211.031(1)(a), supra, the court in *Ayres* stated at 735: "The basic goal of a neglect law is to prevent the social, physical, and psychological deterioration of children. None of these evils was present in this case either immediately before the petition was filed, or at the time the petition was filed, or at the time of the hearing. Here, parental care was provided by the Bensons, members of Bonnie's extended family, who occupied a parental position in the life of the child and who has assumed this relationship voluntarily upon request. This is not the case where, the request and placement once being made, the parents, especially the mother, totally ignored the existence of the child, and showed no further parental interest and concern. Accordingly, we find no evidence to support the findings of the court that Bonnie June was a neglected child." A startling and persuasive similarity exists between *Ayres* and the instant case.

With due respect for its expressed concern for the minor children involved, it nevertheless appears that the trial court placed undue emphasis upon Danny's failure to meet all the monthly child support payments and its overemphasis of this facet of the evidence crowded everything else from consideration. Doing so strongly suggests that the trial court became primarily concerned with penalizing Danny, the natural father of the children, rather than assessing and advancing the immeasurable intangible values heretofore alluded to between children and a natural parent which time and experience have proven to be best suited, all other things being equal, for securing the ultimate well-being of minor children. To the total exclusion of proper consideration of whether the minor children were "in need of care and treatment", the court below narrowly construed Section 211.031(1)(a), supra, as being cast solely in terms of punishing aberrant parental conduct. As a consequence of doing so, the court below, as a practical matter, intentionally or unintentionally as the case may be, improvidently seized upon Section 211.031(1)(a), supra, as a statutory vehicle for determining conflicting claims of custodial priority between competing parties, a function totally foreign to the purpose underlying enactment of the statute.

■ An ever increasing trend is abroad to separate natural parents and their children for every imaginable reason. Its continued indulgence seriously jeopardizes the unique role of the family as the principal

bastion of security for children. Danny's failure to pay all monthly child support payments was relevant to the salient issue of neglect only if the children actually suffered from his failure to do so and were in fact "in need of care and treatment" prior to and at the time of hearing, which they were not under any view of the evidence. In raw core terminology, neglect statutes were never intended to surreptitiously destroy the natural custodial rights of parents of factually unneglected children. Placing minor children in an artificial, tri-structured atmosphere consisting of child, foster parent and social worker should never be abstractly viewed as a priority solution.

Having concluded that the evidence totally failed to support the exercise of jurisdiction by the Juvenile Division of the Circuit Court of Macon County, under Section 211.-031(1)(a), supra, regarding custody of the two minor children, the judgment below cannot stand. As Danny's principal contention on appeal demands this result, it is unnecessary to discuss or rule his alternative contention.

Accordingly, the judgment entered by the Juvenile Division of the Circuit Court of Macon County is reversed and the cause is remanded with instructions to said court to set aside and hold for naught its wardship and control order over the persons of minor children Danny Duane Dimmitt and Denise Jeanne Dimmitt, and all custody orders entered pursuant thereto, and to return custody of said minor children Danny Duane Dimmitt and Denise Jeanne Dimmitt to Danny Lee Dimmitt, their natural father, and, upon doing so, to dismiss said petition seeking to have said minor children declared to be neglected under Section 211.-031(1)(a), RSMo 1969.

Reversed and remanded with directions.

All concur.