**In re the Interest of A.H., M.H. and A.H., Minors.**

**No. WD 35857.**

Missouri Court of Appeals, Western District.

March 12, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 30, 1985.

Application to Transfer Denied May 29, 1985.

Karl H. Timmerman, Kansas City, for appellant.

Robert B. Paden, Maysville, for respondent.

Daniel L. Chadwick, Hamilton, Guardian ad Litem.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

LOWENSTEIN, Presiding Judge.

The mother of the three minor children (A.H. a female was born May 14, 1974, M.H. a female was born June 16, 1975, and A.H. a male was born October 19, 1979) is appealing the trial court's decision to retain actual custody with the aunt (the mother's sister) and legal custody with the Juvenile Officer. Some preliminary facts are set out below, with the remainder discussed under the other point taken up in this appeal.

May 11, 1980: A fire completely destroys mother's residence in Jackson County killing her husband and two of her five children. The mother and three children escaped the fire.

June 2, 1980: Mother places surviving children with aunt in DeKalb County.

June 12, 1980: Anonymous call to "Child Abuse Hot Line" alleging children had been neglected and abandoned, instigates action by Division of Family Services (DFS) in Jackson County then in DeKalb County.

June 19, 1980: Juvenile Officer of DeKalb County files petition for corrective treatment alleging children had been neglected by being left by legal custodian without care custody or support. The petition stated the children had been in the home of the "sister" since as early as June 2.

July 21, 1980: Hearing before Juvenile judge in DeKalb county; mother waiv-

ing right to counsel, admits to having left the children at aunt's house, and court finds that gives it jurisdiction to transfer legal custody to DFS.[1]

## JURISDICTIONAL QUESTION

The first point on appeal is whether the trial court had jurisdiction on July 21, 1980 to transfer custody. A question of jurisdiction may be raised at any time, and a judgment entered without jurisdiction may be collaterally attacked. *In Interest of K.K.M.*, 647 S.W.2d 886, 888 (Mo. App.1983). Furthermore, a juvenile court is a tribunal of limited jurisdiction, whose powers are strictly confined to its statutory authority. While the juvenile court was created to help children, it is equally charged to protect the legal and constitutional rights of the child and its parents. *In re K.W.H.*, 477 S.W.2d 433, 438 (Mo. App.1972). Although in its order the court did not state the statute on which its jurisdiction was based, the language of the pre-printed petition used by the juvenile officer was copied from § 211.031 RSMo 1978, which reads in pertinent part:

1. Except as otherwise provided herein, the juvenile court shall have exclusive original jurisdiction in proceedings:

(1) Involving any child who may be a resident of or found within the county and who is alleged to be in need of care and treatment because:

(a) the parents or other persons legally responsible for the care and support of the child neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary to his well-being; ...

(b) the child is otherwise without proper care, custody or support;

Since whether the court had jurisdiction in July, 1980 turns on the information the court had before it *at the time*, this court will not presently consider the complicated series of events which have taken place in the four and one half years which followed. Those facts will be summarized in the other point of this opinion. As mentioned before, the juvenile officer's petition was by and large a pre-printed form. The only facts typed in consisted of the children's names and ages, the mother's name and address, the aunt's name and address, and the following paragraph:

It is alleged that the natural mother placed [A.H.] and [A.H.] in the home of _____, sister, Clarksdale, Missouri, on June 2, 1980 and has since placed [M.H.] in the same home leaving said juvenile's without legal care, custody and control and the whereabouts of the natural mother being unknown.

The transcript of the July 21 hearing is only seven pages long and the only people who spoke on the record were the mother and the juvenile officer. The mother agreed to proceed without an attorney, and no guardian ad litem had been appointed for the children, the court having noted the children also waived the right to counsel.[2] The following excerpts show the paucity of evidence before the court:

COURT: ... I do not know the facts and circumstances in this case. The facts as alleged by the Juvenile Officer in his petition stand only as statements and they are not proven. You are not compelled to admit the truth of any allegation. If you do admit the truth of the allegations then I will find that the court should take jurisdiction, and I will determine what is in the best interests of the children, what should be done ... Do you understand what the hearing is all about.

1. The judge who heard this portion of the case was not involved in the hearings later mentioned.

2. Section 210.110, et seq. concerns child abuse and neglect and its reporting to the authorities by a "hotline". The definition of neglect is similar to the portion of § 211.031 applicable here for a determination of change of custody. Section 210.160 1.(1) mandates in "every" case involving a judicial proceeding involving a neglected child under § 210.110, "the judge shall appoint a guardian ad litem to appear for and represent" the child.

MOTHER: Well, I think so.

\* \* \* \* \* \*

COURT: ... I would like to ask you at this time whether or not you wish to admit or deny the truth of the statements in the petition?

MOTHER: Well, I did leave them with my sister.

COURT: As stated then, it's true?

MOTHER: Yes.

COURT: That you left them with your sister?

MOTHER: She could have found my whereabouts.

\* \* \* \* \* \*

JUVENILE OFFICER: ... It is our understanding that you do have a home in Kansas City, however, haven't got any appliances there at the present time; is this correct? The natural father is deceased.

MOTHER: May 11th.

At no point in the hearing did the court or juvenile officer ask the mother *why* she left the children with her sister. While the recent death of her husband was barely touched upon, there was no inquiry into how he died, or any questions about the May 11th fire that also killed two of the mother's children and totally destroyed the residence and all their personal belongings. The juvenile officer and guardian ad litem here rely on *In the Matter of Trapp*, 593 S.W.2d 193 (Mo. banc 1980), to invest the juvenile court of DeKalb County with jurisdiction. *Trapp* stands for the proposition of a neglect petition "couched in the language of the statute" defining jurisdiction is adequate to vest jurisdiction to enter custody orders. *Id.* at 199–200. Were it not for the petition showing that the children had been left by the mother with her sister, along with the mother's address, *Trapp* would control the day on the point of conclusory language in the petition, *i.e.*, the children are neglected within the meaning of the law, provides notice sufficient to invest jurisdiction. The mother contends that the cases of *In re Ayres*, 513 S.W.2d 731 (Mo.App.1974), and *In Interest of Dim-*

*mitt,* 560 S.W.2d 368 (Mo.App.1977), are dispositive of this point on appeal. These cases stand for the proposition that temporarily placing a child with an extended family member during a period of strife does not amount to neglect or abandonment by the natural mother.

In *Ayres,* the mother fled the family home because her husband had savagely beat her. A nine month old daughter was placed with friends of the family where she stayed for about eight years. There was no controversy that during this entire period the mother visited her daughter as often as she could. When the mother finally tried to get her daughter back, the friend prevailed upon a juvenile officer to file a neglect petition and the trial court placed the child under control of the Division of Welfare.

The Eastern District of the Court of Appeals reversed saying it would be setting "a dangerous precedent of charging the parents with neglect and depriving them of the natural custody of their children if every time parents placed the physical custody of their children with a surrogate or a member of their extended family because of a temporary inability ... to provide for their children." 513 S.W.2d 735. The court went on to say "when tragedy strikes and the parents are beleaguered by problems beyond their control, in our opinion, a placement with a more fortunate relative or concerned friend would appear to be the best thing reasonable, concerned, caring parents could do for their children." *Id.* The eastern district has also held where there is good cause because of a temporary situation, a parent may leave a child in the custody of a third party without abandoning the child. *H.D. v. E.D.*, 629 S.W.2d 655, 658 (Mo.App.1982).

This court followed *Ayres* in *Dimmitt* where a father was trying to regain children placed with the maternal grandparents when the now deceased mother had suffered mental health problems. There, as in the present case, the children's needs and wants were being supplied prior to and at the time the neglect petition was filed.

The minor children were not "in need of care and treatment." 560 S.W.2d at 372. This court also pointed out that "the right of natural parents to have custody of their minor children, unless their welfare is manifestly jeopardized by reason of parental unfitness, is considered inviolate and vigilantly guarded." *Id.* at 371. This court concluded in *Dimmitt* that the evidence totally failed to support the exercise of jurisdiction by the juvenile court under § 211.031(1)(a) and ordered the custody be returned to the natural father.

The facts in the present case fall under the holding of *Ayres* and *Dimmitt.* When tragedy struck, the mother sought help from family members. The aunt voluntarily consented to take in the three children, then ages 6, 4 and 6 months. In a later hearing, the aunt complained that the children were left without food, clothing or money. But a fire had only two weeks before destroyed all the family's possessions. They had nothing to bring with them. The mother had no job, no car, no money, and was under the emotional stress from the loss of her two children and husband.

■■■ To assert jurisdiction, the juvenile court must find clear and convincing evidence the child is in need of care and this need is because of the parent's neglect. In *Interest of K.H.,* 652 S.W.2d 166, 167 (Mo. App.1983). Even giving due deference to the trial court and even with the mother admitting the allegations of the petition, there was no clear and convincing evidence that the children were in need of care and that this need had arisen because the mother neglected to provide the care necessary for the children's well-being. When the only allegation on the face of the petition is that a parent has left children with an extended family member or concerned friend, the trial court should be on notice to inquire into the reasons, and if there are extenuating circumstances, as there clearly were here, the trial court has no basis on which to exercise jurisdiction to remove custody from the mother. The petition and evidence did not show the mother had

dropped off the children and left for parts unknown. An address for her was on the petition and service was immediately had on her. She showed up in court and testified her sister knew where she was. *See In Interest of R.S.P., H.D.P. and C.M.P.,* 619 S.W.2d 863 (Mo.App.1981). This is not to say that a petition filed later, showing that the children were living with the sister without contact or help by the mother and with no excuse or reason for an extended and indefinite stay, backed up by supporting evidence would not invoke court jurisdiction. The infirmity here is the evidence, or lack thereof, did not support a case of neglect sufficient to entry of an order changing custody on July 21, 1980.

## REVIEW OF SUBSEQUENT ORDERS

■■ Had not the jurisdictional infirmity been present, and based on the standard of review in *In the Interest of M.N.M.,* 681 S.W.2d 457, 459 (Mo.App.1984),

> Deference is given to the trial court's assessment of the credibility of witnesses and its judgment will be affirmed unless it lacks substantial evidence for its support, unless it is against the weight of the evidence, or it erroneously declares or applies the law,

and based on the overriding concern stated in *In re B.G.S.,* 636 S.W.2d 146, 148 (Mo. App.1982),

> The general rule that natural parents have a primary right to the custody of their children is controlling when it is consistent with the welfare of those children. This is so because the rule favoring natural parents stems from the presumption that maintaining the natural parent/child relationship is best for the child. When in conflict, however, the rule favoring parental custody is superseded by the concerns of the state for the child's welfare,

this court would have still reversed.

The following series of events happened after the July 21, 1980 order.

September 10, 1980: Mother signs 6 month service agreement with Jackson County DFS which spelled out four points

with which mother should comply to regain custody of children.

October 3, 1980: DeKalb DFS informed Jackson DFS that aunt wished to adopt children and hoped mother would voluntarily terminate parental rights.

June 17, 1981: Mother signs second service agreement.

April 12, 1982: Mother signs third service agreement.

January 3, 1983: Mother signs fourth service agreement.

February 4, 1983: Mother obtains legal counsel.

April 21, 1983: Mother files motion to transfer.

April 28, 1983: Supervision of children to Jackson County.

May 12, 1983: Mother remarries. Mother asks for accounting of children's social security money which was being diverted to DFS.

May 18, 1983: Guardian ad litem appointed.

June 6, 1983: Hearing held—transfer refused; court requested psychological evaluation of mother and independent third party study of mother's home.

August 3, 1983: Home study recommending return of children filed with court.

August 12, 1983: Favorable psychological evaluation on mother filed with court. The children are now 9, 8, and 3.

August 30, 1983: Mother files Motion for Modification.

October 13, 1983: Hearing held; return of children denied.

November 29, 1983: Mother files Motion to Dismiss.

December 8, 1983: Mother files Motion for Finding of Fact & Conclusions of Law; hearing held; motions denied; court on own motion transferred custody from DeKalb DFS to juvenile officer.

This appeal is from the December 8 order and, by special order also from the October 13 order. The evidence favorable to the court keeping the children with their aunt discloses the 26 year old mother to have been emotionally distressed after the fire. Her activities were less than favorable.

She did not visit or call the children and did not carry her end of the bargain and many of the service agreement requirements. Although without job, money or a car, her inability to make the approximately one hour and thirty minute trip to DeKalb County from Kansas City may be partially explained. In April, 1983 the mother married a man who has six children and is now working on his fourth marriage. Since early in the matter the numerous workers from the Jackson County DFS have worked for and testified for the return of the children to the mother. The DFS worker in DeKalb has opposed such action. DFS in DeKalb County never made a home study on the mother. Exchange of reports and interchange of information between the two offices was nil.

At the October 13 hearing the guardian ad litem said the children should be returned to the mother but with supervision from DFS. The juvenile officer of DeKalb County made the same recommendation.

At no time was the sister's home ever disparaged as to treatment of the children. The two oldest children made repeated requests to return to their mother.

At the time of the October 13 hearing the studies on the mother were favorable. She had been regularly visiting the children. She lived in a large house in Independence, Jackson County, with her husband. The fear of DeKalb DFS about "instability" of her marriage had not materialized, and the lifestyle of the mother and her husband, although causing concern, did not rise to the level to keep custody from the mother. She had by that time the ability to care for the children. The fact of a good home at the aunt's is not dispositive. *In re I.M.J.*, 428 S.W.2d 18, 28 (Mo.App.1968). To that extent the orders of October and December 1983 were subject to reversal.

Unfortunate to the disposition of this matter are the following facts. The mother, married at age 16 had 5 children and a husband who did not treat her well. The mother's limited education and emotional maturity have hurt. So has the fact that a guardian ad litem was not appointed until

May of 1983. The mother never had counsel until April of 1983. The mother's new husband (April 1983) has 6 children of his own living with them (2 out of wedlock born within 2 weeks of each other), and is less than an ideal husband. The mother's earlier lack of funds, a car, and emotional distress have made her to appear somewhat unconcerned about her children. Most troubling has been the conduct of DFS. The DeKalb office has throughout this long period steadfastly ruled against the mother while never visiting her home or even accepting Jackson County's reports. The Jackson County DFS has been plagued by a constant turnover of caseworkers handling the file. That office has, since the early days of the situation recommended the children's return to the mother. The lack of cooperation between the two offices of the same department and the resulting competition between the two sent mixed signals to all who had to make a decision as to what to do with the children. The guardian ad litem correctly requested the court to have someone other than these offices handle further studies and evaluations. The confusion and delay caused by the DFS rivalry put an extra burden on the guardian ad litem. The guardian ad litem made a recommendation for return to the mother after participating in the hearings but did not appeal the adverse final ruling nor initially file a brief. As confusing and unique as the facts are in this case, his advocacy on behalf of the children should extend to brief and argument on appeal. Otherwise, his duties were performed under the standards listed in *In Interest of J.L.H.*, 647 S.W.2d 852, 860–61 (Mo.App. 1983).

To further confuse matters, the juvenile officer and the guardian ad litem who at trial both ultimately recommended return, with conditions, to the mother, have filed briefs which advocate affirming the trial court orders or granting an additional hearing. These contentions are denied. The mother's point concerning error in allowing the sister and her husband, as foster parents, to present evidence does not require a decision in view of the disposition.

The long and short of this situation is the mother has received a more than complimentary home study by an independent person. She has received a clean bill of health on her mental condition. She has a home, a car, and a longstanding intent to reunite her family. She has everything but her children. It is time to end the intramural fight between the mother and her sister. It is also hoped the county offices of DFS can approach the important matters of recommendation and investigation of child custody with more collegiality. ·

The judgment of the trial court is reversed and remanded with instructions to set aside and hold for naught the order of neglect resulting in wardship and control over A.H., M.H. and A.H., of July 21, 1980, and all custody orders entered pursuant thereto, and to dismiss the petition calling for same. The Juvenile Officer of DeKalb County is to take the three minors, within three days from and after receipt of this opinion, from the home of the aunt, the foster home, and deliver them to the home of the mother. No costs.

All concur.