In the Interest of G.A.W.

No. 63618.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 28, 1993.

Gerald J. Harvath, Pacific, for appellant.

Melvin G. Franke, Villa Ridge, for respondent.

Prudence F. Johnson, guardian, pro se.

CRIST, Judge.

Father appeals the decision of the juvenile division of the Circuit Court of Osage County granting custody of his daughter to Roy Dudenhoeffer, her stepfather. We reverse.

G.A.W. was born on August 19, 1981. Her parents divorced in 1984 and Mother was granted primary custody. The decree granted Father visitation and temporary custody and ordered him to pay child support of $50 per week. Mother married Roy Dudenhoeffer in 1987. G.A.W. continued to reside in Linn, Missouri, with Mother and Dudenhoeffer. Father drove almost 100 miles to Linn, Missouri, to visit G.A.W. almost every other weekend.

On September 18, 1991, Mother passed away suddenly. At Mother's funeral, Father and Dudenhoeffer agreed G.A.W. would go to live with Father after she was given some time to adjust to the Mother's death. Dudenhoeffer then changed his mind and decided to seek permanent custody of G.A.W. Dudenhoeffer informed Father of this decision over the telephone. A few days later, Father went to G.A.W.'s school unannounced and attempted to take her home with him before Dudenhoeffer had a chance to file for custody. Because school authorities were not familiar with G.A.W.'s father and had received no notice he would be picking her up, they contacted Dudenhoeffer and the sheriff. The deputy sheriff arrived at the school and summoned help from the Division of Family Services (DFS). G.A.W. was then taken into "24 hour protective custody" to prevent her father from taking her home with him.

On October 4, 1991, Dudenhoeffer filed a Petition for Guardianship and Conservatorship with the Probate Court requesting appointment of him as guardian of G.A.W. This petition was transferred to the juvenile court. After receiving Dudenhoeffer's guardianship petition, the trial judge ordered Gerald Poepsel, the juvenile officer, to file a petition. On January 23, 1992, the juvenile officer filed a petition alleging G.A.W. was in need of care and treatment because Father, the person legally responsible for her care, neglected or refused to provide proper support and care. The only facts alleged in the petition to support this allegation were: "[i]n the County of Osage, State of Missouri, since 1987, the biological father has failed to support the child." The petition requested the court to "make and enter such judgment as the Court shall find necessary in the interest of the juvenile."

Based on the juvenile officer's petition, the court granted an *ex parte* emergency order the very same day finding:

The removal of the child is necessary to protect the child because the parents were divorced when the custodial parent died. The child did not have any relationship with the biological father but was bonded to the stepfather.

The court ordered G.A.W. placed in the legal custody of DFS and the physical custody of Dudenhoeffer, although she had never been relinquished into the Father's custody.

On January 5, 1993, the trial judge held a hearing on the juvenile officer's petition. During this hearing Father admitted he had not made child support payments of $50 per week as ordered. He testified he had an extrajudicial agreement with Mother whereby he would buy clothes and set aside money for college for G.A.W. in lieu of support payments.

Dudenhoeffer testified he was aware Mother had agreed to let Father set aside money in a college fund instead of making weekly support payments. Dudenhoeffer also testified G.A.W. was not forced to go without any necessities as a result of Father's failure to make his scheduled support payments.

The trial judge found Father's failure to pay decretal child support constituted statutory neglect under Chapter 211, RSMo 1986. He awarded primary custody of G.A.W. to Dudenhoeffer and granted Father temporary custody and visitation rights consistent with the divorce decree. Father now appeals.

On appeal, Father alleges the trial court's order finding he neglected G.A.W. was clear-

ly erroneous in that it was "wrong as a matter of law and against the overwhelming weight of the evidence."

Appellate review of a juvenile court's decision is governed by Rule 73.01, as interpreted in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *In Interest of M.D.S.,* 837 S.W.2d 338, 339–40 (Mo.App.1992). The juvenile court is required to find by clear and convincing evidence that the child is in need of care due to the parents' neglect. *Id.* at 340.

Father and the guardian ad litem argue the juvenile officer failed to establish Father's conduct constituted neglect. We agree. Father, as the only surviving natural parent, has a right to have custody of G.A.W., unless it is shown her welfare is manifestly jeopardized by his unfitness. *In Interest of Dimmitt,* 560 S.W.2d 368, 371 [3] (Mo.App.1977). In *Dimmitt,* the court stated this relationship is to be vigilantly guarded because, "[t]he relationship between natural parent and child is too sacred and runs too deeply to be indifferently approached or lightly interfered with." *Id.*

In order for the juvenile court to be able to deprive a natural parent of custody, it must find by clear and convincing evidence that: (1) the child is in need of care, and (2) this need is due to the parent's neglect. *In Interest of A.H.,* 689 S.W.2d 771, 775[4] (Mo. App.1985).

At the hearing, no evidence was presented indicating G.A.W. was in need of any care or was being neglected in any way. Rather, all the evidence indicated she was being cared for very well and that Father had the financial means to support her. According to the court in *Dimmitt,* "failure to pay all monthly child support payments [is] relevant to the salient issue of neglect only if the children actually suffered from [Father's] failure to do so and were in fact 'in need of care and treatment' prior to and at the time of hearing." 560 S.W.2d 368, 373[6] (Mo. App.1977).

The testimony at the hearing indicates this was not true in G.A.W.'s case. No evidence was presented indicating G.A.W. was in need of anything. Dudenhoeffer stated neither he nor Mother ever complained to Father about his delinquency in decretal child support prior to this custody dispute. Further, Dudenhoeffer testified he mentioned Father's child support delinquency to DFS officers only because he was grabbing for anything he could use to request an order of child protection granting him temporary physical custody. He stated it had nothing to do with whether the child support payments had been made or not.

We find the trial court's order holding Father's failure to pay monthly child support as ordered in the divorce decree constituted statutory neglect erroneously declared and misapplied the law. Accordingly, we find it unnecessary to address Father's claim the trial judge erred in not recusing himself from this case.

All proceedings and orders in the juvenile court are reversed and held for naught. Custody of G.A.W. is and shall be granted to Father.

CRANDALL, P.J., and REINHARD, J., concur.