602 S.W.2d 848 (1980)
In re the Interest of A. K. S. and S. L. H.
CLAY COUNTY JUVENILE OFFICER, Petitioner-Respondent,
v.
Cynthia V. SMITH, Natural Mother-Appellant.
Nos. WD 31084, WD 31085.
Missouri Court of Appeals, Western District.
July 8, 1980.
Motion for Rehearing and/or Transfer Denied August 4, 1980.
*849 Michael E. Reardon, Duncan, Russell & Reardon, Kansas City, for natural mother-appellant.
Max Von Erdmannsdorff, Von Erdmannsdorff, Zimmerman & Shank, Kansas City, for petitioner-respondent.
Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.
Motion for Rehearing and/or Transfer to Supreme Court Denied August 4, 1980.
DIXON, Judge.
The natural mother appeals the judgment of the Juvenile Court of Clay County determining that her two natural children, S. L. H. and A. K. S., be removed from her custody and made wards of the Juvenile Court and their custody placed with the natural fathers of the children. A. K. S. and S. L. H. are half brother and sister, their natural fathers being different individuals. A. K. S. is a male child seven years old and S. L. H. is a female child thirteen years old.
The issue presented by the appeal is the jurisdiction of the court under § 211.031[1] to adjudicate neglect upon the facts shown. Because of the nature of the issue raised, it will be unnecessary to recite in complete detail the evidence concerning the care and treatment of the children. The issue is not really an issue of sufficiency of the evidence, but of the interpretation of the statute in the light of the evidence, which is virtually uncontradicted.
The natural mother of the children was employed in two jobs, one as a teacher, the other as a bartender in a topless bar. As a consequence of her two jobs, the children were left without any supervision, except that of the older child, during the evening hours from early evening until 2 or 3 a. m., as well as at isolated hours during the day when the mother was not in the home. A variety of male persons had been present in the home in the last year or so before these proceedings were instituted. The last and most consistent visitor was one Martin McKee who is acknowledged to be the current male companion of the natural mother.
There was some evidence that the children were not properly fed and that the house was very dirty. The significant evidence, however, which raises the issue on this appeal, was the conduct of the mother, her male companion, and the general lifestyle which the natural mother pursued. The natural mother had admitted to her mother that she had used both cocaine and marijuana. The juvenile girl acknowledged that she had smoked marijuana in the presence of her mother and had been offered marijuana by the mother. The natural mother admitted that the children had been present while other people used marijuana and that she had been present in the home when the older juvenile had used marijuana.
There was evidence that the natural mother and her male companion had engaged in intercourse in the presence of the *850 female juvenile and that the female juvenile had also observed, on another occasion, the natural mother and her male companion engaged in an act of oral sex, at which time the mother requested the female child to touch her male companion's leg.
The testimony also included a variety of references to the pornographic material available to the female child and various forms of sexual apparatus, the nature and use of which were explained to the female child by her natural mother. The male companion of the natural mother had provided sexually suggestive Christmas gifts and cards to the female child and had given her sexually suggestive greeting cards on other occasions. The evidence included recital of a bizarre incident in which the thirteen-year-old juvenile was required to model costumes worn by the natural mother at her work at the topless bar, on which occasion the male companion made sexually suggestive comments to the female juvenile.
The natural mother indicated to the court in a postevidentiary statement that she felt she had reached a point with her female child that she could not control her and that her relationship with the child was such that there was an impasse. She indicated she wanted the child to be where she wanted to be but that if she would remain with her mother she must respect the mother's rules for her. The female child indicated a desire to not remain with her mother but to be placed with her grandmother.
The controlling statute is § 211.031.1(1) which provides in pertinent part as follows:
"1. Except as otherwise provided herein, the juvenile court shall have exclusive original jurisdiction in proceedings:
(1) Involving any child who may be a resident of or found within the county who is alleged to be in need of care and treatment because:
(a) The parents or other persons legally responsible for the care and support of the child neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his wellbeing; except that reliance by a parent, guardian or custodian upon remedial treatment other than medical or surgical treatment for a child shall not be construed as neglect when the treatment is recognized or permitted under the laws of this state; or
(b) The child is otherwise without proper care, custody or support; or
(c) The behavior, environment or associations of the child are injurious to his welfare or to the welfare of others;"
The pivot of the natural mother's attack on the judgment of the trial court is a characterization of the petitions in the cases as asserting jurisdiction in the juvenile court under the provisions of § 211.031.1(1)(a) rather than under § 211.031.1(1)(c). The argument of the natural mother is that the petitions contain the allegations of neglect in the statutory language of § 211.031.1(1)(a). The petitions recite that the juveniles were neglected because the parents "refuse to provide proper support, education, which is required by law, medical, surgical or other care necessary for her (his) well being," to-wit: thereafter reciting by factual allegation the matters subsequently shown in the evidence. The contention is that the facts pleaded and proven do not reach the issue of neglect by a lack of proper support, medical care, or education recited in § 211.031.1(1)(a); but, rather, as the natural mother tacitly concedes, the facts show neglect under § 211.031.1(1)(c) in demonstrating harmful behavior and associations.
It might suffice to hold that the evidence of the natural mother's long absences each day from the home, of a lack of proper food, and of the unsanitary conditions, were sufficient to sustain the court's judgment. The determination by this court, however, need not rest upon that narrow ground. The petitions in this case do not specifically refer to any subsection of the statute. A juvenile proceeding of this nature is a civil action, L. v. Jackson County Juvenile Court, 544 S.W.2d 330 (Mo.App. 1976), and partakes of the nature of an action in equity. State ex rel. R. L. W. v. *851 Billings, 451 S.W.2d 125 (Mo.1970). As in any civil case, the jurisdiction of the court rests upon the facts pleaded and not upon a characterization of the pleader or his adversary based upon conclusions contained in the pleading, In re A. S. v. Murphy, 487 S.W.2d 589 (Mo.App.1972). Thus, the petition is sufficient to confer jurisdiction if it alleges facts giving rise to invoke jurisdiction under any subsection of § 211.031. In re A. S., and State ex rel. McCarty v. Kimberlin, 508 S.W.2d 196 (Mo.App.1974). There was no attack on the petition, and there was no objection to the evidence as it came in. The first mention of the present objection is in the notice of appeal. The factual matters stated in the petition, shown in the evidence, and found by the court in its judgment clearly support the jurisdiction of the court.
In the argument portion of the brief, the natural mother broadens the argument by asserting that:
"Appellant believes that this Court can take notice of recent social trends allowing greater permissiveness in moral attitudes, and Appellant respectfully submits that she was doing no more than living according to accepted morals. Appellant is not asking for this Court's approval of her life-style, but is simply contending that her circumstances and behavior are not so unusual or bizarre as to justify intervention by the State."
Cited is In re Dimmitt, 560 S.W.2d 368 (Mo.App.1977), for its statement that the Juvenile Code authorizes intervention when the Juvenile Court finds legislatively-prescribed conditions to exist and not otherwise. There can be no quarrel with the principle of In re Dimmitt concerning the limitations upon. the power of the Juvenile Court. But agreement with that principle does not require this court to conclude that the natural mother was "living according to accepted morals," nor that the behavior shown in the evidence was not "unusual or bizarre."
The Juvenile Code, as an expression of the doctrine of parens partiae, necessarily requires the courts to determine issues of "neglect" of children in the light of societal norms. The legislature, by the nature of its function, cannot determine those norms in any comprehensive fashion to include any possible variation of fact presented. It is the function of the court to say when the care and support of children does not reach the level of care and support of children in the society as a whole and constitutes neglect.
Nor is the tacit assumption of the natural mother's argument set forth above acceptablethat neglect relates only to physical sustenance and matters of physical health. To accept that assumption would require a completely amoral approach to juvenile matters and restrict the juvenile court to an examination of the physical health and environment of children. No such restriction is stated or implied in the Juvenile Code and its purpose. No doubt some factual situations might present a determination by the court of the fine line between proper parental discretion in the care and training of children and societal needs in general, but the instant case requires no such determination.
By a second point in the brief, the natural mother attacks the judgment of the trial court in respect to the male child. The insistence is that the evidence relates to the female child and that no evidence connects or relates this to harmful effect upon the younger male child. The harm to a sibling, potential in the harm done to another child, is sufficient to justify intervention of the court to remove the sibling from the harmful environment. In re A. A., 533 S.W.2d 681 (Mo.App.1976). It would be anomalous for this court to find that the 13-year-old female was in jeopardy under these facts and find to the contrary with respect to the 7-year-old male child. In fact, the lack of the presence of the mother for long periods of time, the claim of improper nourishment, and lack of cleanliness have greater impact upon the issue of neglect of this seven year old and, very likely, standing alone, would support the judgment.
The natural mother finally urges that the trial court's "findings of fact and conclusions were insufficient, clearly erroneous and were not supported by the evidence." *852 It is sufficient to say that the trial court's findings of fact tracked the petition and the evidence. They were fully supported by that evidence and, in the light of this court's opinion that such evidence shows neglect, were correct and not erroneous.
The judgments are affirmed.
All concur.
NOTES
[1] All statutory references are to RSMo 1978 unless otherwise indicated.