IN the INTEREST OF J.J.

No. 51028.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 21, 1986.

H. Carl Kuelker, St. Louis, for appellant.

Andrew Kotchar, John T. McCaffrey, St. Louis, for respondent.

Eric M. Martin, St. Louis, guardian ad litem.

REINHARD, Judge.

Mother and father appeal from an order of the juvenile division of the City of St. Louis Circuit Court assuming jurisdiction over their child and placing custody of the child with the Division of Family Services for foster care placement on a temporary basis. We affirm.

The child, J.J., was born at Barnes Hospital on April 19, 1985. On May 3, 1985, before the child was taken from the hospital, a petition was filed by the juvenile officer alleging that the child came within the provisions of § 211.031, RSMo Cum. Supp.1984. After a detention hearing on May 6, 1985, the court found probable cause to believe that J.J. was within the provisions of § 211.031 and ordered that the child be detained in the custody of the Division of Family Services for protection.

Prior to a hearing on the petition, an amended petition was filed in which the juvenile officer alleged that J.J. fell within the provisions of § 211.031 because he was "without proper care, custody and support." More specifically, it was asserted that mother had a mental disorder which made her incapable of providing care for the child, and that she had "failed or refused to continue with the necessary treatment to stabilize her mental condition." It was further alleged that father had a mental condition which rendered him unable to provide adequate care for the child without supervision.

The evidence adduced at the hearing on the amended petition revealed that father and mother are not married, but have lived together since 1977, and they presently reside in a three-room house. Father was married previously and has not divorced his wife, with whom he had two children. Mother has never been married. She and father have had three children together, including J.J., and the other children have also been removed from their custody. In addition, mother has another child who was placed in foster care in San Francisco, California, in 1978 when mother was found on a bus in a catatonic state. Father had been working eight hours a day as a handyman for a real estate company, but just prior to the hearing he became unemployed and he stated that he plans to seek disability benefits. In the 1960's, he was convicted on two charges of burglary and was confined in the Missouri State Penitentiary. He has been admitted to Malcolm Bliss Mental Health Center five times, most recently in 1976.

The court heard testimony from a Barnes Hospital psychiatrist who had seen mother in the hospital after the birth of J.J. and had examined her extensive hospital records at Barnes Hospital and Malcolm Bliss, where she has been hospitalized many times. He diagnosed mother as being a chronic schizophrenic. He said the condition can be treated by medication; however, mother has a history of failing to follow up on medical appointments and does not always take her medication. It was his opinion that, at the time he saw her, she could not parent an infant child. He also testified that if she were seeing a psychiatrist on a regular basis and taking her medicine as prescribed, there is a possibility that she could take care of the child. He had a conference with the father and mother in which he told them he was filing an affidavit with the court in connection with proceedings to remove J.J. from their custody and informed them of his plan for mother's treatment. He testified that "she refused that treatment and Mr. [J.] described our actions as a conspiracy and would not listen to further discussion."

A staff psychologist for the juvenile court tested the father on September 27, 1985, for more than four hours. His diagnosis was that "[father] has an ongoing psychotic condition and it has paranoid features to it." He said that at this time, father "would need outside help to be an adequate parent[,] . . . either parent training classes or some ongoing support and monitoring by an outside agency."

Father and mother both recognize her psychological problems. She admitted that she does not take her medicine as prescribed, but only when she feels it is needed. Father says that he will see that she takes the medicine, and that he will be in the house with mother and child or make sure someone else is. He expressed his belief that he is being persecuted by "the system" because of his political views.

The court found that there was clear, cogent, and convincing evidence that the child came within the provisions of § 211.-031, and that he was without proper care, custody or support. The court took jurisdiction of J.J.; care, custody, and control was granted to the Missouri Division of Family Services for appropriate placement. A plan was approved which requires mother and father to maintain safe and adequate housing and to cooperate with all agencies offering services to them; mother is to continue to see her psychiatrist regularly and is to take her medication as prescribed. Mother and father were granted liberal visitation rights under the plan, and the court set a review hearing for May 22, 1986.

In their sole point on appeal, mother and father contend that there was insufficient evidence to support the trial court's finding that J.J. was neglected within the meaning of § 211.031 and assert that "the testimony offered consisted only of speculation as to whether or not appellants could parent this child as the child was never in their custody."

The Juvenile Code provides:

1. Except as otherwise provided herein, the juvenile court shall have exclusive original jurisdiction in proceedings:

(1) Involving any child ... who is alleged to be in need of care and treatment because:

(a) The parents or other persons legally responsible for the care and support of the child *neglect* or refuse to provide proper support ... or other care necessary for his well-being; ...; or

b) The child is otherwise without proper care, custody or support[.]

Section 211.031, RSMo Cum.Supp.1984.

 The court is required to find that the child is in need of care and treatment and that the condition of need has arisen because the natural parents neglect or refuse to provide the proper support or other care necessary for the child's well-being. *In the Interest of Dimmitt*, 560 S.W.2d 368, 372 (Mo.App.1977). "The basic goal of a neglect law is to prevent the social, physical and psychological deterioration of children." *In Re Ayres*, 513 S.W.2d 731, 735 (Mo.App.1974). When faced with a potentially harmful situation, the juvenile court does not have to wait until the harm is done before it can act. *L. v. Jackson County Juvenile Court*, 544 S.W.2d 330 (Mo.App.1976).

Here, the court was confronted with a very young child and a mother with admittedly severe mental problems. The father has psychological problems of his own, and, when working, was out of the home eight hours a day. The court found that the child was in need of proper care. The parents, although expressing a desire to care for the child, were unable to do so at this time. The evidence indicates that if they follow medical advice and cooperate with the agencies and others offering assistance, in all likelihood they will eventually be able to care for the child. However, the court was not required to "test" the parents by subjecting the infant child to the potentially harmful environment which the evidence indicates currently exists in their home.

The guardian ad litem's remarks to the court sum up this case succinctly:

[I]t looks like we have a 16 hour a day father for a child with a mother that can't function. The other eight hours bothers me quite a bit ... You've got a situation where both the psychiatrist and the psychologist indicated that help is needed for both parents. It looks to me like neither one's getting it right now ... I've got to go with the expert testimony I've heard today.

The judgment here was supported by substantial evidence and was not against the weight of the evidence; nor did it erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The court's action was justified by the evidence and its order was reasonable.

Judgment affirmed.

DOWD, P.J., and CRIST, J., concur.