**In the Interest of M.A., a minor,**

v.

**J.A. and N.A., Appellants.**

**No. 55148.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 3, 1989.

Rehearing Denied Nov. 8, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 12, 1989.

Application to Transfer Denied
Jan. 10, 1990.

Stephen C. Banton, Paul E. Ground, Frederick P. Johnston, Manchester, for appellants.

Mary F. Goodwin, Clayton, Chester B. Hayes, Florissant, for respondent.

GARY M. GAERTNER, Presiding Judge.

This is an appeal from a decision of the Juvenile Court of St. Louis County adopting the findings and recommendations of Commissioner Walton Lemay that the Juvenile, M.A., was in need of care and treatment under RSMo section 211.031.1(1) (1986).

M.A. was born January 23, 1975, and is the youngest of four children. In November of 1987 he was attending religion classes on Wednesday nights at Crestview Junior High. Due to his misbehavior in class, the class teacher expelled M.A. To discipline M.A., his father took M.A. into the basement of their home and ordered him to get into a 3' × 4' dog cage used to transport the family's German Shepherd dog. The cage was then pushed between a metal beam of the house and some shelves to prevent M.A. from escaping. The duration of the confinement is in dispute but at a minimum M.A. was to remain in the cage for the same two hour period he would usually be in the religion class. This practice continued every Wednesday until January of 1988 when M.A. was taken into protective custody. The testimony also contains evidence of the cage being used on at least one Saturday. While so confined M.A. was not permitted use of the restroom.[1]

M.A. ultimately told his teacher and school principal about the cage and the police investigated. A search warrant was obtained and the cage was seized from the minor's home. In addition, M.A. was taken into protective custody.

A hearing was held on this matter on May 8, 1988. A commissioner found that M.A. was without proper care by reason of confinement in the cage and ordered M.A. returned to his home "subject to the supervision by the juvenile officer."[2] The circuit court adopted these findings.

Juvenile proceedings and the appellate review of them are civil proceedings and the scope of review is as in court-tried cases. *In Interest of S.B.*, 712 S.W.2d 18, 19 (Mo.App., E.D.1986). Thus, the court must affirm the decision of the trial court unless there is no substantial evidence to support it. *Id.*

Appellants first claim that, as they housed, fed and clothed the minor, there was no violation of section 211.031.1(1). That section provides in part:

211.031. Juvenile court to have exclusive jurisdiction when—exceptions.—1. Except as otherwise provided herein, the juvenile court shall have exclusive original jurisdiction in proceedings:

(1) Involving any child who may be a resident of or found within the county and who is alleged to be in need of care and treatment because:

(a) The parents or other persons legally responsible for the care and support of

---

1. Sometime during the first night M.A. learned that the door to the cage swung in, thus allowing him to escape. The actual time of confinement, therefore, was usually only a few minutes. Both parents discovered M.A.'s ability to escape the confinement but felt that M.A.'s belief that he would be put into the cage was sufficient punishment.

2. As this was a neglect petition and not a petition for termination of parental rights, the commissioner could not order that the parental rights be terminated.

the child neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his well-being; except that reliance by a parent, guardian or custodian upon remedial treatment other than medical or surgical treatment for a child shall not be construed as neglect when the treatment is recognized or permitted under the laws of this state; or

    (b) The child is otherwise without proper care, custody or support;

Appellants claim that the juvenile court based its decision on subsection (1)(a) of section 211.031 and that their method of discipline does not fall within its provisions. Respondent argues, however, that the juvenile court relied on subsection (1)(b).

The findings and recommendations of the commissioner cite section 211.031.1(1)(a). This court also has stated in the past that where a question of parental neglect or neglect by another person who has received custody of a child by court order is raised, subsection (1)(a) should be applied. *In re Ayres*, 513 S.W.2d 731 (Mo.App., St.L.D. 1974).

This does not aid the appellants, however. The appellants claim that putting their child into a cage is not "neglect" under the statute. To support this proposition the appellants cite several cases in which section 211.031.1(1)(a) was applied and claim that these cases show that the statute only applies where the parents "fail to provide the necessities of life to children." This court refuses to give the statute such a narrow construction.

Neglect is to be determined in light of societal norms. *In the Interest of A.K.S.*, 602 S.W.2d 848, 851 (Mo.App., W.D.1980). To limit its meaning to matters of physical deprivation would be to "require a completely amoral approach to juvenile matters and restrict the juvenile court to an examination of the physical health and environment of children. No such restriction is stated or implied in the Juvenile Code and its purpose. No doubt some factual situa-

tions might present a determination by the court of the fine line between proper parental discretion in the care and training of children and societal needs in general, but the instant case requires no such determination." *Id.*

■ The issue here is not a termination of parental rights case. The juvenile court took jurisdiction and the order of the court places the child under supervision in his own home with his parents. Under the circumstances, the order is not unreasonable. This leads us to the question of whether or not the disciplining of a child by placing him into a dog cage is consistent with societal norms. This determination is necessarily a judicial function. *Id.*[3] The juvenile court, after hearing all of the evidence, determined the caging of M.A. to constitute neglect. We find that there was substantial evidence to support this finding.

■ The appellants argue that the juvenile court erred in forbidding them from testifying as to the care and support they provided M.A. This evidence, while relevant in a hearing to terminate parental rights, is immaterial where the sole issue was to determine if the caging, in itself, constituted neglect.

The decision of the juvenile court is affirmed.

SIMEONE, Senior Judge, concurs.

CRIST, J., dissents in separate opinion.

CRIST, Judge, dissenting.

I dissent. Confining a twelve-year-old child in a dog cage may or may not be neglect. The State has admitted, and the majority opinion reflects, the only question presented is whether the caging was neglect per se. The caging was unusual punishment, but under the facts of this case it was not neglect per se because the child was not harmed, physically or mentally.

---

**3.** "The legislature, by the nature of its function, cannot determine [the Societal norms] in any comprehensive fashion to include any possible

variation of fact presented." *In Interest of A.K.S.*, 602 S.W.2d at 851.

The cases relied upon by the majority do not sustain the result reached. *In Interest of S.B.*, 712 S.W.2d 18, this court reversed the judgment because there was insubstantial evidence the mother left her child in the care of a cousin whom mother knew had previously sexually molested another cousin. *In re Ayres*, 513 S.W.2d 731 was also a reversal because of failure to prove neglect. This court therein stated "neglect law is to prevent the social, physical, and psychological deterioration of children." *Id.* at 735 [7, 9]. And *In Interest of A.K.S.*, 602 S.W.2d 848 is of little help even though the neglect finding was affirmed. In *A.K.S.* the evidence showed harmful behavior to the child in that the child did not have proper food, lived in unsanitary conditions, and her mother daily left her without proper supervision.

Missouri case law supports a finding the mere caging without harm to M.A. was not neglect. *In re C___ F___ B___*, 497 S.W.2d 831 (Mo.App.1973) there was no neglect where parents recognized their daughter needed psychiatric care and they set out on a course of treatment. The *In Interest of Dimmitt* court, 560 S.W.2d 368 (Mo.App. 1977) found no neglect of natural father. *In re the Interest of A.H.*, 689 S.W.2d 771 (Mo.App.1985) is another case finding no neglect, and setting out our standard of review as being more strict than that stated by the majority. This case held there must be "clear and convincing evidence the child is in need of care and this need is because of the parents neglect." *Id.* at 775 [4, 5]. The *In Interest of J.J.* court, 718 S.W.2d 235 (Mo.App.1986), affirmed a neglect judgment where there was evidence of mental deficiencies of mother and father. The J.J. court stated:

> The basic goal of a neglect law is to prevent the social, physical and psychological deterioration of children.

*Id.* at 237 [1, 2]. And, this court affirmed in *In Interest of E.J.*, 741 S.W.2d 892 (Mo. App.1987), but the child had physical infirmities imposed on his body by a parent.

In the case at bar, parents had a mischievous boy. They had tried numerous forms of punishment, but with little success. They provided him with two years of professional counseling. They were actively involved in his training. They gave him proper care and support. They were caring and loving parents, and tried to do the right thing. The caging was done for disciplinary reasons, but was tempered with parental love.

There were no more than eight confinements, and on each of those confinements, the child had the run of his parents' well-lighted basement, and was in and out of the cage as he pleased. There was no evidence the confinements caused any deleterious effect on his physical or mental well being.

Contrary to the majority opinion, evidence of care and support provided to this child was relevant to determine if the caging was neglect. From the evidence, it appears parents did everything right except for the caging.

There was insufficient evidence for supervision by the State. The mere confinement in a 4' by 3' dog cage, for short periods of time, without harm to the child, was not neglect per se. I believe the parents are better able to discipline this boy without hindrance from the State.