795 So.2d 526 (2001)
In the Interest of S.C. and C. C.: B.R.C.
v.
STATE of Mississippi.
No. 2000-CA-00837-SCT.
Supreme Court of Mississippi.
September 27, 2001.
*527 John Carlton Dawson Jr., Biloxi, Attorney for Appellant.
Herbert Wayne Wilson, Gulfport, Attorneys for Appellee.
Before McRAE, P.J., MILLS and WALLER, JJ.
WALLER, Justice, for the Court:
¶ 1. This case involves the abuse and neglect of three-year-old S.C. ("daughter") and her ten-year-old brother, C.C. ("son").[1] The daughter's grandmother, believing the daughter had been abused by her father, went to the Department of Human Services (DHS), which sought protective custody *528 before the Harrison County Youth Court. Ultimately, the youth court ordered that the daughter be placed in the custody of her mother, the son be placed in the custody of his mother, and that the father's visitation rights be terminated. The court further ordered that termination of parental rights proceedings be initiated against the father. Feeling aggrieved, the father appeals, raising the following issues:
I. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE INTRODUCTION OF DOCUMENTARY EVIDENCE TO ESTABLISH THE TRUTHFULNESS OF A DECLARANT'S STATEMENTS?
II. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE INTRODUCTION OF DOCUMENTARY EVIDENCE CONTAINING INFORMATION BASED UPON INADMISSIBLE HEARSAY STATEMENTS?
III. WHETHER THE TRIAL COURT ERRED BY ALLOWING TESTIMONY CONCERNING MATTERS THAT WERE IRRELEVANT TO THE CAUSE OF ACTION BEFORE THE TRIAL COURT AND CONCERNING ALLEGED OTHER BAD ACTS?
IV. WHETHER THE TRIAL COURT ERRED WHEN IT ALLOWED HEARSAY TESTIMONY PURSUANT TO MISS. R. EVID. 803(25)?
V. WHETHER THE TRIAL COURT ERRED WHEN IT ADJUDICATED THE DAUGHTER TO BE AN ABUSED CHILD AND THE SON TO BE A NEGLECTED CHILD?
VI. WHETHER THE TRIAL COURT ERRED IN ITS INTERPRETATION AND APPLICATION OF MISS. CODE ANN. § 43-21-603(7) AS IT RELATED TO THE DISPOSITION AND PERMANENCY HEARINGS AND RESULTING ORDERS?

STATEMENT OF THE CASE
¶ 2. On February 17, 2000, a shelter hearing for the daughter was held by the Harrison County Youth Court, in which the court found there was probable cause to believe it had jurisdiction. The youth court ordered the temporary placement of the daughter with the maternal grandmother.
¶ 3. On February 22 and 23, 2000, petitions were filed in the youth court alleging that the daughter was an abused child and the son was a neglected child, both within the meaning of the Youth Court Law, Miss.Code Ann. §§ 43-21-101 to-755 (2000 & Supp.2001). Also, on February 23, 2000, a shelter hearing was held with respect to both children. The youth court ordered the continued custody placement of the daughter with the grandmother and granted supervised visitation to the father and the daughter's mother. The youth court also appointed Dr. J. Donald Matherne, a clinical psychologist, to evaluate the son and daughter. Dr. Matherne prepared reports with respect to his evaluations of the children and testified in the proceedings as an expert witness.
¶ 4. On May 9 and 10, 2000, a trial was held in youth court resulting in the adjudications of the daughter as an abused child and the son a neglected child.
¶ 5. On May 12, 2000, the trial court entered an opinion and disposition order granting custody of the daughter to her mother and custody of the son to his mother. The youth court order further terminated the father's visitation rights as to *529 both children and ordered that a permanency hearing be set within thirty (30) days from the date of the order.
¶ 6. On June 12, 2000, a permanency hearing was held in youth court. The court reaffirmed the previous custody placements of the daughter and son, ordered that DHS initiate termination of parental rights proceedings against the father, and enjoined the father from having any contact with either child.

FACTS
¶ 7. At the time the original complaint was made to DHS, the father and the daughter's mother were involved in divorce proceedings, and the father had custody of the daughter and son.
¶ 8. At trial the daughter's testimony could be best described as conflicting and inconsistent, as might be expected from a three year old. However, the daughter did specifically state three times, "My daddy stuck his finger in my butt." Pauline Myers, a social worker with DHS, testified that during her interview with the daughter, the daughter told her the father put his finger in her buttocks.
¶ 9. Dr. Matherne reported the daughter also told him her father had put his finger in her buttocks, and he concluded the father had sexually abused the daughter. With respect to the son, Dr. Matherne's diagnostic impression was that the son had a "sibling relationship problem which indicated a problem existing between himself and S. [the daughter]." The relationship problem is related to the son's acting out sexual behavior with his two sisters. Dr. Matherne's "Report of Psychological Evaluation" regarding the daughter and son was introduced into evidence.
¶ 10. The older sister related an incident that occurred where her father touched her in an inappropriate manner while she was at his home. The son explained that his father showed him Playboy magazines and taught him about sexual acts from those magazines. The son further testified that he had been caught mimicking sexual acts with his maternal half-sister, and with the daughter, at the father's house. The son's conduct did not involve the performance of any actual sex acts, but imitation of sexual behavior.

STANDARD OF REVIEW
¶ 11. The youth court may hear any evidence that is material and relevant to disposition of the cause, including hearsay and opinion evidence. In re R.D., 658 So.2d 1378, 1390 (Miss.1995). The visitation and restrictions in a custody hearing are within the discretion of the chancery court. White v. Thompson, 569 So.2d 1181, 1185 (Miss.1990). The standard of review for the youth court is the same as that of a chancellor whether the ruling was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. M.C.M.J. v. C.E.J., 715 So.2d 774, 776 (Miss.1998).

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE INTRODUCTION OF DOCUMENTARY EVIDENCE TO ESTABLISH THE TRUTHFULNESS OF A DECLARANT'S STATEMENTS.

II. WHETHER THE TRIAL COURT ERRED WHEN IT ALLOWED THE INTRODUCTION OF DOCUMENTARY EVIDENCE CONTAINING INFORMATION BASED UPON INADMISSIBLE HEARSAY STATEMENTS.
¶ 12. The father argues that Dr. Matherne's reports concerning the daughter and son were inadmissible hearsay. *530 Dr. Matherne recorded that the daughter told him her father put his finger in her buttocks and that the son stated the father explained sex to him using Playboy magazines. The court found the statements from the children recorded in the reports were admissible pursuant to the medical records exception to the hearsay rule, M.R.E. 803(4).
¶ 13. The medical records exception to the hearsay rule allows statements made for the purpose of diagnosis or treatment to be introduced to be into evidence:
(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term "medical" refers to emotional and mental health as well as physical health.
M.R.E. 803(4).
¶ 14. There is a two-part test for admitting hearsay statements: (1) the declarant's motive in making the statement must be consistent with purposes of promoting treatment; and, (2) the content of the statement must be such as is reasonably relied on by the physician. United States v. Renville, 779 F.2d 430, 436 (8th Cir.1985), cited with approval in Jones v. State, 606 So.2d 1051 (Miss.1992); Mitchell v. State, 539 So.2d 1366 (Miss.1989).
¶ 15. Dr. Matherne's opinion was the daughter had been abused and the son neglected, and the children should only have supervised contact with the father. The statements taken by the doctor from the daughter and the son were used by the doctor in his diagnosis and treatment of the children as directed by the trial court. This meets the requirements under the first prong of the Renville test. As a result of interviewing the children, the doctor recommended the daughter and son be removed from the custody of the father. The doctor reasonably relied on those statements in determining a diagnosis and recommending treatment for the daughter and son, and providing the trial court with an independent assessment, satisfying the second prong of the Renville test. The children and doctor testified concerning the statements and were subject to cross-examination. We find these statements relate to diagnosis and treatment and were properly admitted by the youth court pursuant to M.R.E. 803(4).

III. WHETHER THE TRIAL COURT ERRED WHEN IT ALLOWED TESTIMONY CONCERNING MATTERS THAT WERE IRRELEVANT TO THE CAUSE OF ACTION BEFORE THE TRIAL COURT AND CONCERNING ALLEGED OTHER BAD ACTS.
¶ 16. The father argues the court allowed inadmissible testimony from the son about what his father taught him from the Playboy magazines and from the daughter's older half sister about inappropriate touching by the father.
¶ 17. The older half sister disclosed an incident that occurred once while she was lying down at the father's house. Her father came into the room, removed the covers, and touched her inappropriately. This fits within the exception of M.R.E. 404(b), specifically showing intent, knowledge and an absence of mistake or *531 accident, and substantiates the fact the daughter was not mistaking a good touch with a bad touch. M.R.E. 404(b) provides that, "evidence of other crime, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See Crawford v. State, 754 So.2d 1211, 1220-21 (Miss.2000); Bradford v. State, 759 So.2d 434, 437 (Miss.Ct.App.2000).
¶ 18. The improper sex education given to the son by the father was admissible under M.R.E. 404 and 803(4). The testimony of Dr. Matherne about the Playboy magazines in the father's truck, and the father's misuse of the magazines with the son, was recorded in his report, taken for diagnostic and treatment purposes, and meets the hearsay exception within M.R.E. 803(4). The magazines are sexual in nature, the father showed them to the son, and the son indicated he learned specific sexual behavior from the father. According to M.R.E. 404, this can be used to show motive, intent, and absence of mistake. The testimony about what the father told the son about the depictions in the Playboy magazines is not inadmissible hearsay.
¶ 19. The trial court is required to weigh the probative value against the danger of unfair prejudice. Flowers v. State, 773 So.2d 309, 318 (Miss.2000). The judge in weighing the probative value versus the prejudicial value made specific evidentiary findings as to the admissibility of this evidence.
¶ 20. This assignment of error is without merit.

IV. WHETHER THE TRIAL COURT ERRED WHEN IT ALLOWED HEARSAY TESTIMONY PURSUANT TO MISS. R. EVIDENCE 803(25).
¶ 21. The father argues that the statements made by the daughter to Pauline Myers, a DHS social worker, were inadmissable hearsay. DHS responds that the trial court, properly analyzed the factors under the tender years exception to the hearsay rule pursuant to M.R.E. 803(25), and appropriately allowed Myers to testify.
¶ 22. M.R.E. 803(25), the Tender Years Exception, provides:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
¶ 23. The comment to Rule 803(25) explains some of the factors the court should examine to determine if there are sufficient indicia of reliability:
(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant;(3) whether more than one person heard the statements (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6)the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive *532 techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely the declarant fabricated.
¶ 24. The youth court analyzed the twelve factors from Rule 803(25). The judge considered the credibility of the person testifying, age of declarant, and whether there were any suggestive techniques used. The youth court considered these factors correctly, determining each had a substantial indicia of reliability. Also, the father had the opportunity to cross-examine Myers and the daughter.
¶ 25. Where a child is under the age of twelve, there is a rebuttable presumption that the child is of tender years, and where a child is twelve or older, a trial court must make a factual determination as to whether the person is of tender years based on mental age. Veasley v. State, 735 So.2d 432, 433 (Miss.1999). Here, the daughter was three, and the son was ten. Both are presumed to be of tender years and have not reach the threshold age of twelve. Id. at 432. Myers's testimony is admissible in accordance with the tender years exception. Dr. Matherne's testimony, already addressed, is further admissible under M.R.E 803(4) and 803(25).
¶ 26. This issue is without merit.

V. WHETHER THE TRIAL COURT'S ADJUDICATION THAT THE DAUGHTER TO BE AN ABUSED CHILD AND THE SON TO BE NEGLECTED CHILD IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 27. When considering whether the verdict is against the overwhelming weight of the evidence, the trial court considers the evidence in the light most favorable to the prevailing party. Collins v. Lowndes County Pub. Wel. Dep't, 555 So.2d 71, 72 (Miss.1989). A court may find that if one child is abused, the child's siblings are neglected. In re E.S. v. State, 567 So.2d 848, 850 (Miss. 1990). The basis is that a sibling has been harmed, and the potential harm to the other child is sufficient to warrant both children being removed from the harmful environment. In re A. K. S. v. Smith, 602 S.W.2d 848, 851 (Mo.App.1980) (cited in E.S., 567 So.2d at 850). Neglect is further demonstrated through the son's mimicking of sexual behavior with the daughter, which he learned from the pornographic materials provided by his father. Such activity was referred to by Dr. Matherne as a "sibling relationship problem."
¶ 28. The final decision of the youth court adjudicating the daughter abused and the son neglected was based on substantial evidence, including the testimony of the daughter; Dr. Matherne; Mrs. Myers; the son; and the older half sister.
¶ 29. This issue is without merit.

VI. WHETHER THE TRIAL COURT ERRED IN ITS INTERPRETATION AND APPLICATION OF MISS. CODE ANN. § 43-21-603(7) AS IT RELATED TO THE DISPOSITION AND PERMANENCY HEARINGS AND RESULTING ORDERS.
¶ 30. The father argues that the youth court misapplied Miss.Code Ann. § 43-21-603(7) (2000) by placing the children with their respective mothers. The youth court held the father is unfit to exercise custody or control over any of his children, citing § 43-21-603(7)(c)(i) and (iv), which reads:
(7) In the event that the youth court orders that the custody or supervision of a child who has been adjudicated abused or neglected be placed with the Department of Human Services or any other person or public or private agency, other than the child's parent, guardian or custodian, *533 the youth court shall find and the disposition shall recite that:
(c)(i) The parent has subjected the child to aggravated circumstances including, but not limited to, abandonment, torture, chronic abuse and sexual abuse; or ...
(iv) That the effect of the continuation of the child's residence within his own home would be contrary to the welfare of the child and that placement of the child in foster care is in the best interests of the child.
¶ 31. The daughter was adjudicated to be sexually abused by the father and the son was adjudicated neglected. It is therefore clear that it is in the best interests of both children not to be placed in the custody of their father. As the maternal parent, the mother was not only the appropriate custodian but preferred. This assignment of error is without merit.

CONCLUSION
¶ 32. This is an unfortunate and tragic case where not only was innocence lost, but the emotional health of these two children was severely damaged. The evidence considered by the youth court judge was probative, relevant, and material. Although termination of visitation rights is a harsh remedy, it is clearly appropriate in this case in light of the substantial evidence presented of the abuse and neglect of these children while in the custody of their father. The judgment of the Harrison County Youth Court is affirmed.
¶ 33. AFFIRMED.
PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, COBB, DIAZ AND EASLEY, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.
NOTES
[1] The three main parties are B.R.C., "father," C.C., "son," and S.C., "daughter." The son and daughter are both biological offspring of the father, but from different mothers who will be referred to as the "daughter's mother" and "son's mother." Other family members who are involved in this proceeding include the daughter's maternal grandmother, "grandmother" and the daughter's older sister by the daughter's mother, "older sister."